UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELVIN MOORE,

              Petitioner,

    -vs-

JAMES CONWAY, Superintendent


              Respondent.

_____

**DECISION AND ORDER**

**No. 08-CV-6390T**

## I.   Introduction

*Pro se* petitioner Melvin Moore ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered April 25, 2003, in New York State, County Court, Monroe County, convicting him, after a jury trial, of Rape in the First Degree (N.Y. Penal Law ("Penal Law") § 130.35[1]), Sodomy in the First Degree (Penal Law § 130.50[1]), Assault in the Second Degree (Penal Law § 120.05[2]), Menacing in the Second Degree (Penal Law § 120.14[1]), and Unlawful Imprisonment in the Second Degree (Penal Law § 135.05).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

Petitioner was indicted by a Monroe County Grand Jury by Indictment No. 0814/2001 and charged with Rape in the First Degree,

Sodomy in the First Degree, Assault in the Second Degree, Menacing in the Second Degree, Sexual Abuse in the First Degree, Sexual Abuse in the Second Degree, and Unlawful Imprisonment in the Second Degree. <u>See</u> Ind. No. 00811, dated 11/30/10 (Resp't App. B at 5-10). The charges arose from three separate incidents involving three separate female victims. In all three incidents, Petitioner attacked women who were walking down streets in the City of Rochester in the morning hours. The three incidents were tried together before the same jury, despite Petitioner's pre-trial request for severance. <u>See</u> Letter from Louis P. Pilato, Esq. to Hon. David Egan, dated 08/29/02 (Resp't App. B at 90); Decision of Supreme Court, Monroe County (Hon. David D. Egan), dated 09/26/02 (Resp't App. B at 102).

**<u>The Jennifer Antonetti Incident</u> (Victim #1)**

On the morning of December 25, 1999, 17-year-old Jennifer Antonetti ("Antonetti" or "Victim #1") left her home on Edison Street in the City of Rochester at approximately 9:30 a.m. to walk to her job at a local Wilson Farms store. As she walked toward the store, a car pulled up alongside her and the driver waived at her. Antonetti recognized the driver as Petitioner, who was a regular customer at the Wilson Farms store. Petitioner asked Antonetti if she wanted a ride to work, and Antonetti accepted. Trial Trans. [T.T.] 37-39.

Instead of driving Antonetti to work, Petitioner drove her to a house on the corner of Dorset and Bay Streets and parked in a garage. After parking the car, Petitioner exited the car and came to the passenger side where Antonetti was sitting. Petitioner grabbed Antonetti's arm and took her inside his home located at 854 Bay Street. Once inside, Petitioner told Antonetti to take her shoes off, which she did. Petitioner then directed Antonetti to the living room, where she sat on the couch. Petitioner found some glass cleaner and cleaned a table in the living room, and then told Antonetti to take off her coat. Antonetti refused, and Petitioner unzipped her coat and began kissing her neck. T.T. 40-45.

As Petitioner stood over Antonetti kissing her neck, she pushed him away with both of her hands. Petitioner held Antonetti down with his hands on her shoulders. Petitioner then pushed Antonetti onto another sofa in the living room, and got on top of her, trying to untuck her shirt. Antonetti protested and told Petitioner to stop. Petitioner stood up, put Antonetti in a bear hug, and carried her into his bedroom. Antonetti continued to plead with Petitioner to stop. T.T. 45-46.

Once in the bedroom, Petitioner put Antonetti down on the bed and began taking off her clothes. Petitioner partially took off Antonetti's pants and panties. Antonetti continued to protest. Petitioner held down Antonetti's legs and began licking her vaginal area. Antonetti begged Petitioner to stop. Petitioner then

unzipped his pants and positioned himself on top of Antonetti, trying four or five times to insert his penis into her vagina. Petitioner eventually penetrated Antonetti, but she immediately pushed Petitioner off of her. Petitioner let go of her and she grabbed her things and started to leave. Petitioner asked Antonetti to wait until he deactivated an alarm, which she agreed to do, and then left the house. T.T. 45-50.

After leaving Petitioner's house, Antonetti proceeded directly to the Wilson Farms store where she worked. She arrived approximately five to ten minutes after escaping Petitioner. Once there, she told her ex-boyfriend, Ferron Scott ("Scott"), who also worked at the store, what had happened. T.T. 51-52, 91-93, 156-157.

**The Tieshekia Frieson Incident** (Victim #2)

On the morning of December 14, 1999, 18-year-old Tieshekia Frieson ("Frieson" or "Victim #2") was walking from her house to a bus stop at the corner of Garson Avenue and Webster Road when she encountered Petitioner. Frieson recognized Petitioner as the person who had previously approached her at the same bus stop and asked for her phone number. Frieson continued to walk toward the bus stop and Petitioner followed. Petitioner then indicated to Frieson that he had forgotten something, and asked Frieson to hold the bus for him. As Frieson went to walk away, Petitioner grabbed her from the left side. In his hand, Petitioner had a knife, which

he placed on Frieson's throat.  Frieson placed her hand between the knife and her throat to prevent the knife from cutting her.  In doing so, the knife cut her hand in the middle of her thumb and index finger.  Petitioner then tried to pull Frieson toward an abandoned house.  Frieson screamed and fought with Petitioner, and, after several minutes, Petitioner let her go.  Petitioner then ran around the abandoned house and through a nearby field.  Frieson boarded the bus and went to work.  Frieson's thumb and index finder were injured from where Petitioner held the knife up to her throat. The injury caused her physical pain and limited her ability to write and lift.  T.T. 112-121.

**The E'von O'Neill Incident** **(Victim #3)**

On the morning of November 4, 1999, 12-year-old E'von O'Neill ("O'Neill" or "Victim #3") was walking to school when Petitioner approached her and asked her where the library was located. O'Neill told him she did not know, and Petitioner asked again. O'Neill continued walking and Petitioner came up behind her with a knife and told her to get into his car.  O'Neill complied and Petitioner drove off.  T.T. 172-175.

Petitioner drove to a house close to O'Neill's school, and Petitioner took O'Neill inside. Once inside, Petitioner eventually led her to the basement, in which there were various pieces of furniture.  Petitioner told O'Neill to lie down on a couch, and O'Neill refused.  Petitioner proceeded to get on top of O'Neill and

put his hand on her vagina.  O'Neill protested.  Petitioner told O'Neill to take her pants off, which she refused to do.  Petitioner took O'Neill's pants off and put his hand on her vagina again. O'Neill eventually broke free of Petitioner and ran out of the house and to her school.  T.T. 175-178.

On January 28, 2004, a trial was held before the Hon. John J. Connell.  Petitioner established that there was no scientific evidence, DNA or otherwise, tying him to any of the crimes. Petitioner testified in his own defense and also attempted to establish an alibi for each incident.  The prosecution called various witnesses, including each of the victims.  The prosecution also called Scott, who testified as to the statements made to him by Antonetti after the incident, and Investigator Albert Iacutone of the Rochester Police Department  ("Investigator Iacutone"), who testified as to the line-up procedure he conducted for each of the three victims.

The jury found Petitioner guilty of five counts of the indictment, acquitting him of the two sexual abuse charges related to O'Neill (Victim #3).  Petitioner was sentenced as a second violent felony offender to twenty-seven years in prison with five years post-release supervision.  Sentencing Mins. [S.M.] 12-13.

Petitioner appealed his judgment of conviction, which was affirmed by the Appellate Division, Fourth Department on September

29, 2006. <u>People v. Moore</u>, 32 A.D.3d 1354 (4th Dep't. 2006); <u>lv. denied</u>, 8 N.Y.3d 847 (2007).[1]

On or about March 26, 2004, while his appeal was pending, Petitioner filed a motion, pursuant to N.Y. Crim. Proc. Law ("C.P.L.") § 440, to vacate his judgment of conviction. <u>See</u> Pet'r Motion to Vacate Judgment of Conviction, dated 05/26/04 (Resp't App. Q). That motion was denied on June 30, 2004 by the Monroe County Court, pursuant to C.P.L. § 440.10(2)(b), because the issues raised in Petitioner's motion were pending on appeal. <u>See</u> Decision & Order of the Monroe County Court (Hon. John J. Connell), dated 06/30/04 (Resp't App. T). Leave to appeal was denied on August 25, 2004. <u>See</u> Decision of the Appellate Division, Fourth Department (Hon. Robert G. Hurlbutt), dated 08/25/04 (Resp't App. W).

On or about March 21, 2007, Petitioner filed a second C.P.L. § 440 motion on the grounds that he received ineffective assistance of trial counsel. <u>See</u> Pet'r Motion to Vacate Judgment of Conviction, dated 03/21/07 (Resp't App. J). That motion was denied on May 9, 2007 by the Monroe County Court, pursuant to C.P.L. §440.10(2)(c), because the claim was a matter of record that could have been raised on direct appeal, but unjustifiably was not. <u>See</u> Decision & Order of the Monroe County Court, dated 05/09/07 (Resp't App. M). Leave to appeal was denied on August 17, 2007. <u>See</u>

---

[1]    Petitioner sought reconsideration of the denial of leave to appeal in the New York Court of Appeals, which was denied on June 1, 2007. <u>People v. Moore</u>, 9 N.Y.3d 848 (2007).

Decision of the Appellate Division, Fourth Department (Hon. Elizabeth W. Pine), dated 08/17/07 (Resp't App. P).

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds:[2] (1) the trial court erroneously denied his motion for a mistrial based on prosecutorial misconduct; (2) the trial court erroneously denied his motion for a mistrial based on an impartial jury; (2) the trial court erred in denying his motion to dismiss the indictment pursuant to C.P.L. § 30.30; (3) the trial court erred in allowing the testimony of Scott and Investigator Iacutone; (4) the trial court erred in failing to grant Petitioner's severance motion; (6) his sentence was harsh and excessive; (7) ineffective assistance of trial counsel; and (8) ineffective assistance of appellate counsel.[3]

## III. General Principles Applicable to Habeas Review

### A.     The AEDPA Standard of Review

---

[2]     Petitioner does not list grounds for relief in the habeas petition. Rather, he directs the Court to "see attached brief" and attaches the brief that was submitted, by counsel, on appeal.

[3]     After the filing of the habeas petition, Petitioner sought leave to amend his petition to include two additional claims: an ineffective assistance of trial counsel claim and an ineffective assistance of appellate counsel claim. See Dkts. ## 7, 16-19. In an Order dated November 10, 2009, the Court ordered Petitioner to show cause as to why the claims should not be dismissed as untimely and/or unexhausted. See Dkt. # 20. Petitioner did not comply with the Court's instructions. Instead, he filed two ambiguous -- and, in some respects, conflicting -- Responses with Court (Dkts. # 21 and 24). This Court will construe the ambiguity of Petitioner's pleadings in his favor and address both of his ineffective assistance of counsel claims, which are exhausted, in this Decision and Order. Additionally, in light of this Court's disposition of the habeas petition, Petitioner's pending motions for an evidentiary hearing (Dkt. #19), for leave to proceed in forma pauperis (Dkt. #22), and to appoint counsel(Dkt. #23) are denied as moot.

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner

to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).   The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation.  Daye 696 F.2d at 194.

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'"  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting

<u>Harris v. Reed</u>, 489 U.S. 255, 263, n.9 (1989) (other citations omitted).  Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)."  <u>Id.</u>

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence).  <u>See Wainwright v. Sykes</u>, 433 U.S. 72, 87-91 (1977); <u>see</u> <u>also</u> <u>Sawyer v. Whitley</u>, 505 U.S. 333, 277-78 (1992).

**C.   The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)).  A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. <u>See</u> <u>Harris</u>, 489 U.S. at 262

(citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. <u>See</u> <u>id.</u> It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).

## IV. Petitioner's Claims

### 1. Petitioner's Harsh and Excessive Sentence Claim is Not Cognizable

Petitioner argues that his sentence was harsh and excessive. <u>See</u> Pet. ¶ 22; <u>see</u> <u>also</u> Appellant's Br., Point VI. Petitioner raised this claim on direct appeal, and it was rejected on the merits. <u>See</u> <u>Moore</u>, 32 A.D.3d at 1355. As discussed below, this claim does not present an issue that is cognizable by this Court on habeas review.

It is well-settled law that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.")

(citing <u>Underwood v. Kelly</u>, 692 F.Supp 146 (E.D.N.Y. 1988), <u>aff'</u>
<u>mem.</u>, 875 F.2d 857 (2d Cir. 1989)); <u>accord</u> <u>Ross v. Gavin</u>, 101 F.3d
687 (2d Cir. 1996) (unpublished opinion).  Because Petitioner's
sentence falls within the permissible statutory range, he may not
challenge the length of the sentence in the instant proceeding.

Here, Petitioner was sentenced as a second violent felony
offender to concurrent terms of twenty years imprisonment for Rape
in the First Degree and Sodomy in the First Degree, and a
consecutive seven year term of imprisonment for Assault in the
Second Degree.  These terms are within the ranges prescribed by New
York law for a second violent felony offender convicted of two
Class B felonies and one Class D felony.  <u>See</u> Penal Law § 70.04.

Accordingly, habeas relief is not available to Petitioner on
this ground, and the claim is denied.

**2. Petitioner's Claims that the Trial Court Erred in Admitting the Allegedly Improper Testimony of Scott and Investigator Iacutone Are Procedurally Barred by an Adequate and Independent State Ground**

Petitioner argues that the trial court erred in admitting the
allegedly improper testimony of Scott and Investigator Iacutone.
In particular, Petitioner contends that the testimony of Scott[4] and
Investigator Iacutone[5] constituted impermissible bolstering (to the

---

[4]      Scott testified that he was working at Wilson Farms the day
Antonetti was attacked.  He also testified as to the details of the attack,
and to the identity of Antonetti's attacker.  T.T. 157-158.

[5]      Investigator Iacutone testified as to the line-up procedure he
conducted with Petitioner for each of the victims.  T.T. 241-245.

extent it implicated Petitioner as the perpetrator) and should not have been admitted at trial.  See Pet. ¶ 22; see also Appellant's Br., Points III and V.  Petitioner raised these claims on direct appeal, and the Appellate Division, Fourth Department declined to review them, finding that they had not been properly preserved. See Moore, 32 A.D.3d at 1355.  Respondent argues that Petitioner's failure to preserve these issues for review by the state court creates a procedural default precluding habeas review.  See Resp't Mem., Point IV at 14.  This Court agrees.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground, be it substantive or procedural, that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729.  Here, the state court relied on New York's preservation rule (codified at C.P.L. § 470.05(2)) to deny Petitioner's claims because the issues had not been properly preserved for appellate review.  The Second Circuit has determined that C.P.L. § 470.05(2) is an independent and adequate state procedural ground.  See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999).  The Appellate Division's reliance on C.P.L. § 470.05(2) is an adequate and independent state ground which precludes this Court's review of Petitioner's claims that the trial

court erred in admitting the allegedly improper testimony of Scott and Investigator Iacutone.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice."  Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). "Cause" is defined as "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court."  McCleskey v. Zant, 499 U.S. 467, 493 (1991) (quoting Murray, 477 U.S. at 488).  To demonstrate prejudice, a petitioner must show more than that errors "created a possibility of prejudice, but [instead] that they worked to his actual and substantial disadvantage."  United States v. Frady, 456 U.S. 152, 170 (1982).  Although Petitioner has not specifically alleged cause and prejudice to overcome the procedural bar, he does raise ineffective assistance of counsel as a stand-alone claim.  A claim of ineffective assistance of counsel may establish cause for a procedural default.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991); United States v. Frady, 456 U.S. 152, 168 (1982). However, "[n]ot just any deficiency in counsel's performance will do . . . . [T]he assistance must have been so ineffective as to

violate the Federal Constitution . . . . Attorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." Murray, 477 U.S. at 488-489. Petitioner is unable to make a successful showing of ineffective assistance of counsel.

As discussed under Section "IV, 3" below, Petitioner's stand-alone ineffective assistance of trial counsel claim is procedurally defaulted itself, and Petitioner has made no showing of the requisite cause and prejudice to overcome the procedural default related thereto. See Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) (finding that a petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred); see also Edwards, 529 U.S. at 450-451 (finding that a procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance claim itself). And, as discussed under Section "IV, 4" below, Petitioner is unable to make out a successful ineffective assistance of appellate counsel claim. He has also failed to demonstrate that this Court's failure to review the claims will result in a miscarriage of justice.

Accordingly, Petitioner's claims that the trial court erred in admitting the testimony of Scott and Investigator Iacutone are denied.

## 3. Petitioner's Ineffective Assistance of Trial Counsel is Barred by an Adequate and Independent State Ground

Petitioner argues that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel based on, *inter alia*, counsel's failure to: (1) object to the allegedly impermissible bolstering testimony of Scott and Investigator Iacutone; and (2) preserve a Constitutional speedy trial claim. See Pet'r Motion to Vacate Judgment of Conviction, dated 03/21/07 (Resp't App. J). Petitioner raised this claim in his second C.P.L. § 440 motion, and it was denied on procedural grounds. See Decision & Order of the Monroe County Court, dated 05/09/07 (Resp't App. M). The state court's reliance on an adequate and independent state ground to deny the claim renders this claim procedurally barred from review by this Court.

As discussed above, a federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729. Here, the Supreme Court, Monroe County rejected Petitioner's ineffective assistance of trial counsel claim pursuant to C.P.L. § 440.10(2)(c), finding that the claim was a matter of record that could have been raised on direct appeal, but

unjustifiably was not.  See Decision & Order of the Monroe County Court, dated 05/09/07 (Resp't App. M); see also C.P.L. § 440.10(2)(c) (the court must deny a motion to vacate a judgment when sufficient facts appear on the record underlying the judgment to have permitted adequate review of the issue on direct appeal). The Second Circuit has recognized C.P.L. § 440.10(2)(c) as an adequate and independent state ground sufficient to preclude federal habeas review of a state-court defendant's claims.  See e.g., Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003); Reyes, 118 F.3d at 139;  Aparicio, 269 F.3d at 91 (2d Cir. 1991). The state court's reliance on C.P.L. § 440.10(2)(c) is an independent and adequate state ground, barring this Court's review of Petitioner's ineffective assistance of trial counsel claim. Again, Petitioner does not specifically allege cause and prejudice for the default.  He does, however, raise a stand-alone ineffective assistance of appellate counsel claim on these grounds.  As discussed at Section "IV, 4" below, that claim is meritless and therefore insufficient to overcome the procedural bar.  Petitioner has also not demonstrated that this Court's failure to consider the claim will result in a miscarriage of justice.

Accordingly, habeas relief is unavailable to Petitioner on this ground, and the claim is denied.

**4.  Petitioner's Ineffective Assistance of Appellate Counsel Claim is Without Merit**

Petitioner argues that he was deprived of his Sixth Amendment right to the effective assistance of appellate counsel.  He bases this claim, *inter alia*, on the following:  (1) appellate counsel was not effective in the manner he raised the issues he raised on direct appeal; and (2) appellate counsel failed to raise an ineffective assistance of trial counsel claim.  <u>See</u> Pet'r Coram Nobis Application, dated 11/08.[6]  Petitioner raised this claim in his coram nobis application, which was summarily denied by the Appellate Division, Fourth Department.  <u>See</u> Decision of the Appellate Division, Fourth Department, dated 12/31/08; <u>see also</u> Dkt. # 20 at 2-3.  Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim.  <u>Sellen v. Kuhlman</u>, 261 F.3d 303, 311-12 (2d Cir. 2001).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different."  <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984).  This standard applies equally to trial and appellate counsel.  <u>See Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994),

---

[6]    This document was filed subsequent to the filing of the habeas petition and is therefore not included as part of the original record.

cert. denied, 513 U.S. 820 (1994). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Id. at 533-34; Smith v. Robbins, 528 U.S. 259, 285 (2000). Moreover, counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-53. A petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. See Mayo, 13 F.3d at 533. As discussed below, Petitioner's claim that he received ineffective assistance of appellate counsel is meritless.

**(A) Appellate Counsel was not Ineffective in the Manner in which he Raised Six Issues on Direct Appeal**

Petitioner argues that he received ineffective assistance of appellate counsel because counsel was not effective in the manner in which he raised six issues on direct appeal. In particular, Petitioner claims that: (1) he did not have a chance to review a copy of the brief before it was submitted by counsel; and (2) that

some of the issues counsel raised were unpreserved.  <u>See</u> Pet'r
Coram Nobis Application at 2-4.  This claim fails.

With regard to the former issue, counsel need not confer with
his client about issues of legal strategy (i.e., what claims to
raise on direct appeal).  <u>See</u> <u>Jones</u>, 463 U.S. at 751 ("No . . .
decision of this Court suggests . . . that the indigent defendant
has a constitutional right to compel appointed counsel to press
nonfrivolous points requested by the client, if counsel, as a
matter of professional judgment, decides not to present those
points . . . . [A] per se rule that the client, not the
professional advocate, must be allowed to decide what issues are to
be pressed, . . . [would] seriously undermine[] the ability of
counsel to present the client's case in accord with counsel's
professional evaluation."); <u>Ennis v. Le Fevre</u>, 560 F.2d 1072, 1075
(2d Cir. 1977) ("While all would agree that the decision whether to
take an appeal from a criminal conviction is a critical one
committed ultimately to the defendant himself, decisions concerning
which legal issues will be urged on appeal are uniquely within the
lawyer's skill and competence, and their resolution is ultimately
left to his judgment.").  Moreover, the Court notes that Petitioner
had the opportunity -- and indeed took advantage of the opportunity
-- to file a *pro se* supplemental brief on appeal, in which he could
have briefed further any of the six issues that he believed counsel
did not adequately raise.  To the extent Petitioner could have

(and, in fact, did) filed a supplemental brief raising additional claims and supplementing those raised by counsel, the Court finds Petitioner's claim unavailing.

Similarly, the latter issue -- that appellate counsel was ineffective because he chose to raise unpreserved issues on appeal -- is equally meritless. Appellate counsel's decision to raise unpreserved claims does not, by itself, lead to a finding of ineffective assistance of counsel. See Tung v. Fischer, 01-CV-3877 (JG), 2003 U.S. Dist. LEXIS 22901, *47-8 (E.D.N.Y. Dec. 22, 2003) (even though appellate counsel raised only one ground for appeal, which was adjudicated unpreserved, appellate counsel not ineffective under Strickland); Washington v. Walsh, No. 01-CV-250 (JG), 2002 U.S. Dist. LEXIS 16312 (E.D.N.Y. Aug. 1, 2002) (even though appellate counsel raised two grounds for appeal, both of which were adjudicated unpreserved for appeal, appellate counsel not ineffective under Strickland); Richburg v. Hood, 794 F. Supp. 75, 78 (E.D.N.Y. July 7, 1992) (finding that appellate counsel's decision to raise an unpreserved issue on direct appeal and to address said issue to the "interest of justice" jurisdiction of the appellate court does not, by itself, constitute deficient performance within the meaning of Strickland). Further, even if the decision of appellate counsel to raise the unpreserved issues was an unprofessional error, Petitioner has not demonstrated that

the result of his appeal would have been different absent the alleged error.

Accordingly, the Court cannot find that the state court's adjudication of this claim was contrary to or an unreasonable application of settled Supreme Court law. This portion of Petitioner's ineffective assistance of appellate counsel claim is denied.

**(B)   Appellate Counsel was Not Ineffective for Failing to Raise an Ineffective Assistance of Trial Counsel Claim**

Petitioner also argues that he received ineffective assistance of appellate counsel because appellate counsel failed to raise an ineffective assistance of trial counsel claim based on, *inter alia*, trial counsel's failure to object to the allegedly improper bolstering testimony of Scott and Investigator Iacutone. <u>See</u> Pet'r Coram Nobis Application at 4-17, 30-34. This claim fails too.

The record reflects that appellate counsel submitted a thorough, well-researched brief in which he persuasively argued six points on direct appeal, all six of which Petitioner adopted in his habeas corpus petition. <u>See</u> Appellant's Br., Points I-VI. Petitioner faults counsel, however, for failing to raise an allegedly meritorious ineffective assistance of trial counsel claim. Petitioner's ineffective assistance of appellate counsel claim fails to the extent that the underlying issue supporting it is meritless. It is well-established that appellate counsel cannot be faulted for failing to raise non-meritorious issues. <u>United</u>

States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), cert. denied, 531 U.S. 811 (2000).

First, Petitioner claims that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to object the allegedly improper bolstering testimony of Scott and Investigator Iacutone. In both instances, however, the testimony was admissible and there was no reason for counsel to object.

## The Testimony of Investigator Iacutone

In New York, ordinarily, a witness's in-court identification of a defendant cannot be bolstered by testimony that the witness previously identified the defendant. People v. Trowbridge, 305 N.Y. 471, 475 (1953). This concept has been applied to situations where testimony is elicited which does not expressly state that the witness previously identified the defendant, but where such an inference can be drawn from the testimony. See People v. Holt, 67 N.Y.2d 819 (1986). However, under New York law, inferential bolstering only occurs when the complained-of testimony implies that the witness did in fact implicate the defendant in the crime. People v. Williams, 193 A.D.2d 826, 827 (2d Dept. 1993). Testimony that is equivocal or which simply describes what an officer did after conducting an identification procedure does not constitute inferential bolstering. See e.g., People v. Cunningham, 233 A.D.2d 845, 846 (4th Dept. 1996).

Here, the complained-of testimony was simply a description of what Investigator Iacutone did with each victim witness after each viewed the line-up with Petitioner in it. Investigator Iacutone's testimony was elicited by the prosecutor in response to his inquiry as to where each witness was brought after viewing the line-up. With respect to Frieson (Victim #2) and Antonetti (Victim #1), Investigator Iacutone explained that he brought the two women to the paralegal office in the police station to give a deposition. Investigator Iacutone also testified that after O'Neill observed the line-up, he took her to the same paralegal office, but made no mention of whether a deposition was taken from her. T.T. 241-245. Contrary to defendant's assertion, Investigator Iacutone's testimony that each victim was taken to the paralegal office after viewing the line-up in no way implied that each of the victim witnesses identified Petitioner -- or anyone else for that matter -- in the line-up. Investigator Iacutone's testimony was innocuous in this regard and thus there was no reason for trial counsel to have objected to his testimony.

Appellate counsel cannot be faulted for failing to raise to raise an ineffective assistance of trial counsel claim on this ground, and, accordingly, this portion of his ineffective assistance of appellate counsel claim is denied.

**The Testimony of Scott**

In New York, normally, testimony regarding the prompt outcry of a rape victim may not include details of the incident; however, if "the statements would qualify as spontaneous declarations, excited utterances, or as a prior consistent statement made to bolster the witness's credibility in the face of a claim of recent fabrication," such testimony is admissible. People v. Torres, 175 A.D.2d 635, 636 (4th Dept. 1991); People v. Riggio, 144 A.D.2d 951 (1988). Portions of Scott's testimony in this case were properly admitted as prompt outcry evidence; however, all of the complained-of testimony from Scott was also properly admitted under the excited utterance exception to the hearsay rule.

"Evidence that a victim of a sexual assault promptly complained about the incident is admissible to corroborate the allegations that an assault took place." People v. McDaniel, 81 N.Y.2d 10, 17 (1993). In McDaniel, the Court of Appeals considered what type of testimony is admissible under New York's prompt outcry rule. Prior to McDaniel, the Court of Appeals made it clear "that only the fact of a complaint, not its details, is admissible." McDaniel, 81 N.Y.2d at 17; People v. Rice, 75 N.Y.2d 929, 932 (1990). However, the Court in McDaniel explained that "fact of complaint" included the victim's statements as to who perpetrated the sexual assault and the nature of the crime." McDaniel, 81 N.Y.2d at 18.

Here, Scott's testimony that Antonetti (Victim #1) told him that she had just been raped and that Petitioner was the perpetrator did not exceed the allowable level of detail permitted by McDaniel. Therefore, these facts about which Scott testified at trial were properly admitted as prompt outcry testimony, and trial counsel, therefore, had no reason to object to this testimony.

Additionally, the record reflects that Scott further testified to the details of the crime as told to him by Antonetti, including Petitioner's conduct and the location of the offense. T.T. 157-158. This testimony, although outside the scope of New York's prompt outcry exception, was admissible under the excited utterance exception to the rule against hearsay.

Excited utterances are excepted from the hearsay rule because "they are precipitated by a startling event and made in such proximity to the starting event that the declarant lacks the reflective capacity necessary for fabrication[,]" thereby rendering the statement more trustworthy. Torres, 175 A.D.2d at 636; People v. Edwards, 47 N.Y.2d 493, 497 (1979).

Scott's testimony regarding what Antonetti told him upon arriving at the Wilson Farms store minutes after being raped by Petitioner was admissible as an excited utterance. Antonetti testified that while Petitioner was raping her, she managed to get away from him and out of the house. She proceeded directly from Petitioner's home to the Wilson Farms store where she worked with

Scott. She arrived at the Wilson Farms store in three-five minutes and told Scott what occurred approximately five-ten minutes later. T.T. 51-52, 91. Scott noticed there was something wrong with Antonetti the moment she arrived at work. Scott described Antonetti as "kind of in hysterics" and that she was crying and shaking. T.T. 156. Antonetti did not immediately tell Scott why she was upset, however, Scott continued to ask her. Approximately five-ten minutes after arriving at the store, Antonetti told Scott that she was raped by Petitioner. Additionally, she provided Scott with the details of the attack. Antonetti continued to cry as she described to Scott what had occurred. T.T. 156-158.

Thus, the circumstances surrounding Antonetti's statements to Scott establish that they were excited utterances and were therefore admissible as such. Accordingly, trial counsel had no reason to object to the testimony, and appellate counsel cannot therefore be faulted for failing to raise an ineffective assistance of trial counsel on this basis. This portion of Petitioner's ineffective assistance of appellate counsel claim is therefore denied.

In sum, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of settled Supreme Court law. Petitioner's ineffective of assistance of appellate counsel claim is denied in its entirety.

**5. Petitioner's Claim that the Trial Court Erred in Denying his Motion for a Mistrial Based on Prosecutorial Misconduct is Without Merit**

Petitioner argues that the trial court erred in denying his motion for a mistrial based on prosecutorial misconduct. To support this contention, he cites the following: (1) an attempt by the prosecutor to rehabilitate O'Neill by use of a photo array, which had been displayed to her during direct examination; (2) an incident wherein the prosecutor held up a picture facing the jury after being instructed that the picture was not to be introduced unless it could be tied to the case; and (3) two isolated comments on summation. Petitioner argues that these instances of prosecutorial misconduct, individually and cumulatively, deprived him of his right to a fair trial. See Pet. ¶ 22; see also Appellant's Br., Point I. Petitioner raised this claim on direct appeal, and it was rejected on the merits. See Moore, 32 A.D.3d at 1354 .

To succeed on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor engaged in "egregious misconduct . . . amount[ing] to a denial of constitutional due process." Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (citation and quotation omitted). The question before the reviewing court is whether "the prosecutor's statements so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo,

416 U.S. 637, 643 (1974). Mere impropriety will not meet this standard. Rather, the prosecutor's remarks must have been "so prejudicial that they rendered the trial in question fundamentally unfair." Floyd, 907 F.2d at 355 (citation and quotation omitted). In assessing whether prosecutorial misconduct caused substantial prejudice, the Second Circuit has adopted a three-part test examining: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002). After having carefully reviewed the record, this Court finds that habeas relief is not warranted on this ground.

The first instance of prosecutorial misconduct that Petitioner complains of involved an incident where the prosecutor attempted to rehabilitate O'Neill (Victim #3) by use of a photo array which had been displayed to her during direct examination. On cross-examination, O'Neill had pointed to the wrong individual in a line-up photograph (the individual in position #1) when asked to identify Petitioner. T.T. 226-227. On redirect, the prosecutor attempted to establish that Petitioner was located in a different position (position #3) in the line-up photograph. T.T. 227-228. Defense counsel objected to this line of questioning, and, in the presence of the jury, the trial court sustained the objection on the grounds that the prosecutor was offering testimony. T.T. 227-234. Immediately after the objection was sustained, the jury was

instructed by the court that both the question posed by the prosecutor and O'Neill's answer were stricken. T.T. 234. Arguably, the prosecutor's conduct in this instance was improper; however, the Court finds that his conduct was not particularly severe insomuch as it likely worked to the benefit of Petitioner. See Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990) (explaining that severity of misconduct is one factor in determining substantial prejudice). That is, the prosecutor's statement drew the jury's attention to the fact that O'Neill was unable to make an identification of Petitioner on cross-examination. In any event, any prejudice that resulted from the prosecutor's statement was quickly remedied by the trial court's curative instruction.

The second incident of prosecutorial misconduct that Petitioner complains of occurred when the prosecutor held up a picture facing the jury after being instructed that he could not introduce the picture unless he could tie the picture to the case. To the extent that the prosecutor blatantly disregarded the court's instructions, his conduct was improper. However, the Court cannot find that the prosecutor's conduct was so egregious that it deprived Petitioner of his right to a fair trial. That is, the trial court not only sustained defense counsel's objection to the conduct, but also issued, on the record and in the presence of the jury, a strong curative instruction that called into question the

prosecutor's motives and described the prosecutor's actions as "extremely improper and intentional." T.T. 384-385. Thus, any prejudice that resulted from the prosecutor's conduct was remedied by the trial court's strong curative instruction.

In addition, Petitioner argues that two isolated comments on summation -- one, when the prosecutor called Petitioner a "predator" and the other, when the prosecutor invited the jury to speculate about the evidence -- denied him a fair trial. The Court rejects this contention. In both instances, the trial court sustained defense's counsel objections and, in the second instance, instructed the jury to disregard the prosecutor's argument, explaining that its verdict must "be based on the evidence presented[,] not on speculation." T.T. 510. To this extent, any prejudice that resulted from the prosecutor's isolated comments on summation were remedied by the trial court's curative instructions.

Finally, Petitioner's contention that the cumulative effect of the errors of the prosecutor denied him a fair trial is likewise without merit. As discussed above, the errors Petitioner complains of were immediately corrected by the trial court through curative instructions, some of which were delivered in noticeably strong terms. Additionally, the proof of Petitioner's guilt was strong, such that the outcome of the trial would not have been different absent the prosecutor's alleged misconduct. See, e.g., United States v. Modica, 663 F.2d 1173, 1181 (1981), cert. denied, 456

U.S. 989 (1982) (holding that "if proof of guilt is strong, then the prejudicial effect of the [prosecutor's] comments tends to be deemed insubstantial"); see also Strouse v. Leonardo, 928 F.2d 548, 557 (2d Cir. 1991) ("Moreover, we believe that absent the alleged misconduct, given the overwhelming evidence of Strouse's guilt, he still would have been convicted."); accord, e.g., Norwood v. Artis, 487 F.Supp.2d 321, 332 (W.D.N.Y. 2007).

Accordingly, the Court finds that the Appellate Division properly rejected Petitioner's claim that the trial court erred in denying Petitioner's motion for a mistrial based on prosecutorial misconduct. The state court's adjudication of this claim was neither contrary to nor an unreasonable application of settled Supreme Court law. The claim is denied.

**6. Petitioner's Remaining Claims are Deemed Exhausted but Procedurally Defaulted**

Petitioner contends that the trial court erred in: (1) denying his motion to dismiss the indictment on C.P.L. § 30.30 grounds; (2) denying his motion for a mistrial based upon a "grossly unqualified" juror who was permitted to continue deliberating in violation of C.P.L. § 270.35; and (3) denying his motion for severance pursuant to C.P.L. § 200.20(3). See Pet. ¶ 22; Appellant's Br., Points I, II, IV. Petitioner raised these claims on direct appeal, and the Appellate Division, Fourth Department rejected each of them on the merits. See Moore, 32 A.D.3d at 1354-55. Each of Petitioner's claims are matters of state law that are

not cognizable on habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Further, because Petitioner failed to alert the state court of the federal constitutional dimension of these claims, they are unexhausted for purposes of habeas review.  See Daye, 696 F.2d at 191 .

A federal court may grant habeas relief only on the ground that a petitioner's conviction is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"  Estelle, 502 U.S. at 67-68 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 and citing Pulley v. Harris, 465 U.S. 37, 41 (1984)).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Id. at 68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Id. (citations omitted).  To the extent that Petitioner alleges denial of his statutory rights under C.P.L. § 30.30 and violations of state law under C.P.L. §§ 270.35 and 200.20, these claims are not cognizable on habeas review.

Furthermore, any Constitutional issues related to the denial of the aforementioned motions that Petitioner now seeks to advance were not fairly presented to the state court on direct appeal and therefore remain unexhausted.  As set forth below, the Court,

nonetheless, deems each of these claims exhausted, but procedurally defaulted.

### (A)  C.P.L. § 30.30 Issue

Petitioner argues that the trial court erred in denying his motion to dismiss the indictment on C.P.L. § 30.30 speedy trial grounds. <u>See</u> Pet. ¶ 22; Appellant's Br., Point II . While C.P.L. § 30.30 is known as the "speedy trial rule enacted by New York," and "in large part serves the same purposes, the history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense." <u>People v. Anderson</u>, 66 N.Y.2d 529, 535 (1985). It is well-established, therefore, that solely raising a § 30.30 claim does not "fairly present" a Sixth Amendment speedy trial claim. <u>Bowers v. Miller</u>, 05-CV -6023, 2009 U.S. Dist. LEXIS 59766, at * 13 (W.D.N.Y. July 10, 2009); <u>Rodriquez v. Superintendent</u>, 549 F.Supp.2d 226, 236-37 (N.D.N.Y. 2008); <u>Smith v. Maher</u>, 468 F. Supp.2d 466, 470-71 (W.D.N.Y. 2006).

Here, Petitioner's claim called upon the state courts to make a statutory interpretation of C.P.L. § 30.30. Petitioner specifically articulated his claim as follows: "may an attorney waive accrued C.P.L. § 30.30 time without the informed consent of his client?" <u>See</u> Appellant's Br., Point II at 52-53; Pet'r Leave Application at 1. Indeed, Petitioner's appellate brief and his leave application did make passing reference to the Constitutional

right to a speedy trial and to Supreme Court case law.  However, in both instances, the references were used in an ancillary manner for comparison purposes and simply to augment Petitioner's claim that his **statutory** speedy trial rights under C.P.L. § 30.30 were violated when the trial court denied the portion of his omnibus motion related thereto.  Morever, in rejecting the claim, the Appellate Division cited People v. Trespasso, 197 A.D.2d 891 (4th Dept. 1993), lv. denied, 82 N.Y.2d 854 (1993), a New York State case that expressly rejects the proposition that decisions related to C.P.L. § 30.30 are "fundamental" and therefore reserved to a defendant.  Id.  Thus, the Court finds that the passing references to the Constitutional right to a speedy trial and to Supreme Court case law, used in an ancillary fashion and only to augment Petitioner's narrowly-articulated argument made explicitly under C.P.L. § 30.30, was insufficient to put the state appellate court on notice of the federal constitutional basis of the claim.  See, e.g., Arce v. West, 04-CV-6607, 2009 U.S. Dist. LEXIS 57223, at *11 (W.D.N.Y. July 6, 2009) (finding that "vague reference to the 'constitutional right to a speedy trial', without appropriate argument, and with the only argument being under the state statutory speedy trial right of [ § 30.30], was not sufficient to put the state appellate court on notice of the federal constitutional basis of the claim").  The Appellate Division, Fourth Department's reliance on Trespasso in rejecting the claim

lends further support to this Court's finding that Petitioner failed to properly alert the state courts to the federal constitutional nature of his claim. Consequently, the claim is unexhausted.

Nonetheless, because Petitioner has already used his one right to appeal, <u>see</u> N.Y. Court Rules § 500.20, and because C.P.L. § 440.10(2)(c) precludes Petitioner from collaterally raising this on-the-record claim, the Court deems the claim exhausted, but procedurally defaulted. <u>See</u> <u>Grey</u>, 933 F.2d at 120. Petitioner alleges ineffective assistance of trial counsel as cause for the procedural default. <u>See</u> Pet'r Motion to Vacate Judgment of Conviction, dated 03/21/07 at Point III (Resp't App. J). However, such an allegation is insufficient where, as here, Petitioner's stand-alone ineffective assistance of trial counsel claim is procedurally defaulted itself. <u>See</u> <u>Reyes</u>, 118 F.3d at 140. Petitioner has also not demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, habeas relief is not available to Petitioner on this ground, and the claim is denied.

## (B) C.P.L. § 270.35 Juror Issue

Petitioner argues that the trial court improperly allowed an allegedly unqualified juror to continue deliberating without conducting an adequate inquiry, pursuant to C.P.L. § 270.35(2)(a), into the juror's ability to remain impartial and thus erred in

denying Petitioner's motion for a mistrial on this ground. <u>See</u> Pet. ¶ 22; <u>see</u> <u>also</u> Appellant's Br., Point I. In his brief to the Appellate Division, Fourth Department and in his leave application, Petitioner narrowly framed this argument as an alleged violation of C.P.L. § 270.35, asking "what the minimum allowable inquiry is that must be conducted of a deliberating juror who indicates that he is unwilling to proceed with deliberations." <u>See</u> Pet'r Br. on Appeal, Point I at 30-35; Pet'r Leave Application at 9-10. Indeed, some of the state cases Petitioner cited to in his appellate brief (and his leave application) referenced the Constitutional right to a fair trial, these cases were relied upon only to support his primary argument that the trial court's inquiry was inadequate within the meaning of C.P.L. § 270.35(2)(a). The Court cannot find, therefore, that the state courts were alerted to the federal nature of Petitioner's claim, thus rendering the claim unexhausted.

However, as discussed above, Petitioner no longer has a state court forum in which to raise this claim and the Court, therefore, deems it exhausted, but procedurally defaulted. <u>See</u> <u>Grey</u>, 933 F.2d at 120. Petitioner has not alleged cause and prejudice, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, habeas relief is unavailable to Petitioner on this ground and the claim is denied.

**(C) C.P.L. § 220.20 Severance Issue**

Petitioner argues that the trial court erred in denying his motion for severance pursuant to C.P.L. § 200.20(3).  See Pet. ¶ 22; see also Appellant's Br., Point IV.  Indeed, denial of a motion to sever can, under some circumstances, raise due process issues.  See Byrd v Wainwright, 428 F.2d 1017 (1970).  However, the argument Petitioner submitted to the Appellate Division, Fourth Department was not cast in Constitutional terms.  To the contrary, Petitioner argued this issue as a violation of C.P.L. § 200.20.  Some of the state cases cited in Petitioner's appellate brief do explain the Constitutional implications of severance issues; however, Petitioner's claim was specifically framed as an alleged state law violation.  In his appellate brief, Petitioner argues, in particularized terms, that the trial court erred in determining that the offenses were properly joinable under C.P.L. § 200.20(b), and that the trial court subsequently erred in failing to grant Petitioner's motion to sever, pursuant to C.P.L. § 200.20(3).  See Appellant's Br., Point IV.  In short, the entirety of Petitioner's brief on this issue was addressed to the question of whether the trial court had violated state law in denying his motion to sever. The Court finds, therefore, that Petitioner failed to "fairly present" the legal basis for his claim to the state courts.  See Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) ("T]he basic requirement remains that the nature or presentation of the claim

must have been likely to alert the court to the claim's federal nature.") (quotation marks omitted)). The claim, therefore, is unexhausted.

Nonetheless, as discussed above, Petitioner no longer has a state court forum available to him to exhaust the claim, and so this Court deems it exhausted, but procedurally defaulted. Petitioner makes no showing of the requisite cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, habeas relief is unavailable to Petitioner, and the claim is denied.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1) is denied, and the petition is dismissed. In light of dismissal of the petition, Petitioner's pending motions for an evidentiary hearing (Dkt. #19), for leave to proceed in forma pauperis (Dkt. #22), and to appoint counsel (Dkt. #23) are denied as moot. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith

and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

 S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    October 20, 2010
          Rochester, New York